ORDERED.

**Dated: April 29, 2024**

*Catherine M<sup>c</sup>Ewen*
_____
Catherine Peek McEwen
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| | |
| FELTRIM BALMORAL ESTATES, LLC, | Case No. 8:24-bk-02122-CPM |
| THE ENCLAVE AT BALMORAL, LLC, | Case No. 8:24-bk-02123-CPM |
| BALMORAL ESTATES, LP | Case No. 8:24-bk-02124-CPM |

     Debtors.

_____/

                               (Jointly Administered under
                               Case No. 8:24-bk-02122-CPM)

FELTRIM BALMORAL ESTATES, LLC,      Case No. 8:24-bk-02122-CPM

     Applicable Debtor.

_____/

### FIRST INTERIM ORDER (1) GRANTING DEBTORS' EMERGENCY
### MOTION FOR AUTHORITY TO USE CASH COLLATERAL
### ON AN INTERIM BASIS AND (2) SETTING FURTHER HEARING

THIS CASE came before the Court for hearing on April 23, 2024, at 10:00 A.M. (the

Hearing") for consideration of the *Debtors' Emergency Motion for Authority to Use Cash*

*Collateral* (Doc. No. 11) (the "Motion")[1].  The Motion seeks the entry of interim and final orders

authorizing the Debtors to use "Cash Collateral" as defined in Section 363(a) of the Bankruptcy

Code.

_____
[1] Unless otherwise defined herein, capitalized terms shall have the same meaning ascribed to them in the Motion.

The Court finds that due and sufficient notice of the Motion and the Hearing was provided to: (i) the Office of the United States Trustee for the Middle District of Florida, (ii) Seacoast National Bank, ("Seacoast"), (iii) all known secured creditors of the Debtors, including Lynk Capital ("Lynk") and (iv) the twenty (20) largest unsecured creditors of the Debtors, and that no other or further notice is necessary. The Court considered the Motion, together with the record and the argument of counsel at the Hearing, and it appearing that the use of Cash Collateral to the extent provided herein is necessary on an interim basis in order to avoid irreparable harm to the Debtors, and for the reasons announced on the record at the Hearing which shall constitute the decision of the Court, it is

**ORDERED** that:

1.      Notice of the Motion and the Hearing on the Motion was adequate and appropriate in the current circumstances of these Chapter 11 cases as contemplated by 11 U.S.C. §102(a) and Fed. R. Bankr. P. 4001(b)(2).

2.      The Motion is granted on an interim basis as set forth herein pending a further hearing to be conducted by the Court on May 23, 2024 at 3:00 P.M. (the "Continued Hearing").

3.      All parties may attend the hearing in person. Parties are directed to review Judge McEwen's Procedures Governing Court Appearances (available at https://www.flmb.uscourts.gov/judges/mcewen) for her policies and procedures for remote attendance at hearings by video or telephone via Zoom. If an unrepresented party is unable to access the Court's website, please contact the Courtroom Deputy at 813-301-5151 no later than 6:00 p.m. one business day before the date of the hearing.

4.      Debtors, Feltrim Balmoral Estates, LLC and Balmoral Estates, LP, are authorized to use Cash Collateral only upon the terms and conditions contained in this Interim Order. The

Court determined at the Hearing that the Motion was moot as to Debtor The Enclaves at Balmoral, LLC, and Debtor The Enclaves at Balmoral, LLC is not authorized to use cash collateral absent further order of the Court or the written consent of Seacoast.

5.    The Debtors are authorized, through the date of the Continued Hearing, to use Cash Collateral including, without limitation, cash, deposit accounts, accounts receivable, and proceeds from business operations pending further order of the Court or the written consent of Seacoast or Lynk and in accordance with the budgets (the "Budgets"), a copy of which is attached hereto as **Exhibit A**, so long as the aggregate of all expenses for each week do not exceed the amount in the Budgets by more than ten percent (10%) for any such week on a cumulative basis (the "Variance"). Notwithstanding the foregoing, expenditures in excess of the Variance or not on the Budgets will not be deemed to be unauthorized use of Cash Collateral, unless the recipient can establish that the expense would be entitled to administrative expense priority if the recipient had extended credit for the expenditure; *provided*, *however*, Seacoast's rights with respect to such expense or expenditure are fully reserved and nothing in this Interim Order shall impair, waive, or prejudice Seacoast's rights with respect to the excessive Variance or the recipient.

6.    The Debtors are authorized to provide adequate protection, pursuant to sections 363(c)(2)(A) and 363(e) of the Bankruptcy Code, to Seacoast pursuant to the terms and conditions of this Interim Order.  As adequate protection with respect to Seacoast's interests in the Cash Collateral during the term of this Interim Order, and without prejudice to Seacoast seeking other or further adequate protection, Seacoast is granted a continuing and perfected replacement lien in and upon all of the categories and types of collateral in which it held a security interest and lien to the same extent, validity and priority that it held as of the Petition Date.

7.      The Debtors are prohibited from paying Mr. Kenny or any non-debtor affiliated entities, and from paying any expenses on behalf of Debtor, The Enclave at Balmoral, LLC, except upon further order of this Court.

8.      The Debtors are entitled to collect money from parties with outstanding accounts receivable to the Debtors and no creditor or party in interest shall interfere with the Debtors' collection actions; *provided, however,* the proceeds of such accounts receivable constitute Seacoast's Cash Collateral.

9.      The Debtors shall maintain insurance coverage for the collateral in accordance with the obligations under the loan and security documents between Seacoast and the Debtors.

10.     This Interim Order is not and shall not be construed as determinative as to whether any creditor has a valid lien on any property of the Debtors or the estate.  This Interim Order is not and shall not be construed as determinative as to the extent or amount of any secured claim associated with any such lien.

11.     This Interim Order is without prejudice to the Debtors' right to challenge the extent, validity, or priority of any lien or claim of any creditor and is likewise without prejudice to the right of any creditor to seek additional relief concerning Cash Collateral by subsequent motion, or oppose any such challenge, and nothing contained in this Interim Order shall be deemed to constitute a waiver of any party's rights.

12.     This Interim Order is without prejudice to the Debtors' rights to seek authority by separate motion to pay monies in excess of the amounts set forth in the Budgets or Seacoast's right to object thereto.

13.     In accordance with Rule 4001 of the Bankruptcy Rules, the Court finds the Debtors' authorization to use Cash Collateral pursuant to this Interim Order is necessary to avoid immediate and irreparable harm to the Debtors' estate.

14.     The provisions of this Interim Order shall remain in full force and effect unless modified or vacated by subsequent order of this Court.  The Court shall retain jurisdiction to enforce the terms of this Interim Order.

15.     This Interim Order does not affect any rights of Seacoast with respect to any person or entity other than the applicable Debtors, or any other property not owned by the Debtors.

16.     Under no circumstances shall any Debtor (i) use any Cash Collateral for any purpose other than those authorized by this Interim Order and as outlined in the Budgets without the written consent of Seacoast, or order of the Court; or (ii) use any Cash Collateral to the extent that expenses listed in the Budgets are not actually incurred.

17.     The Replacement Liens provided in this Interim Order shall be deemed automatically valid and perfected with such priority as provided in this Interim Order, without any further notice or act by any party that may otherwise be required under any other law. Notwithstanding the foregoing, the Debtors shall, upon request of Seacoast, execute and deliver such documents as may be reasonably requested to create and perfect the security interests and liens described herein under applicable non-bankruptcy law and Seacoast shall be authorized to file and record such documents and take such other actions as may be necessary to perfect such security interests and liens under all such laws and to correctly describe the collateral subject thereto, and all such documents shall be deemed to have been filed or recorded at the time and on the date of the Petition Date. Unless otherwise provided herein, the terms and conditions of this Interim Order relating to the Replacement Liens granted hereunder shall be binding upon the

applicable Debtors, their creditors, and other parties in interest and all successors in interest thereof including, without limitation, any trustee that is or may be appointed in these cases or any trustee in any case under any other chapter of the Bankruptcy Code into which these cases may be converted.

18.     If any or all of the provisions of this Interim Order are modified, vacated, or stayed by subsequent order of this or any other Court, such stay, modification, or vacation shall not affect the validity and enforceability of any security interest or lien granted or authorized by this Interim Order prior to such stay, modification, or vacation. The reversal or modification on appeal of any or all of the provisions of this Interim Order shall not affect the validity or enforceability of any security interest or lien granted or authorized by this Interim Order.  Nothing herein shall constitute a good faith finding.

19.     This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable effective as of the Petition Date immediately upon entry hereof. Notwithstanding Bankruptcy Rules 4001(a)(1), 4001(a)(3), 6004(h), 7062 or 9024 or any other Bankruptcy Rule, this Interim Order shall be immediately effective and enforceable upon its entry on the docket and there shall be no stay of execution of effectiveness of this Interim Order as provided in such Rules.

20.     Debtors shall timely perform all obligations of debtors-in-possession required by the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and the orders of this Court.

*Attorney Al Gomez is directed to serve a copy of this order on interested parties who do not receive service by CM/ECF and file a proof of service within 3 days of entry of the order.*

**Feltrim Balmoral Estates**
**Budget**
**April 1st 2024 - July 31st 2024**

| Account Type | Account Name | Description | 24-Apr | 24-May | 24-Jun | 24-Jul | TOTAL |
|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | |
| Amenity Fee | Fees due from HOA | | $ 28,050.00 | $ 28,050.00 | $ 28,050.00 | $ 28,050.00 | $ 112,200.00 |
| Amenity Admin & Process Fee | HOA Home Sale Closing Fee | | $ 1,150.00 | $ 1,150.00 | $ 1,150.00 | $ 1,150.00 | $ 4,600.00 |
| Initial Contribution | HOA Home Sale Closing Fee | | $ 4,117.96 | $ 4,117.96 | $ 4,117.96 | $ 4,117.96 | $ 16,471.84 |
| Rental Income | Bar & Grill Rent, Server Room Rent & Office Rent | | $ 13,800.00 | $ 13,800.00 | $ 13,800.00 | $ 13,800.00 | $ 55,200.00 |
| **Total Income** | | | $ 47,117.96 | $ 47,117.96 | $ 47,117.96 | $ 47,117.96 | $ 188,471.84 |
| **Expense** | | | | | | | $ - |
| Bank Service Charges | Bank Fees | | $ 50.00 | $ 50.00 | $ 50.00 | $ 50.00 | $ 200.00 |
| Insurance Expense | Insurance Expense | | $ 8,500.00 | $ 8,500.00 | $ 8,500.00 | $ 8,500.00 | $ 34,000.00 |
| Landscaping | Monthly Landscape | | $ 800.00 | $ 800.00 | $ 800.00 | $ 800.00 | $ 3,200.00 |
| Maintenance Supplies | Misc. Maintenance Supplies | | $ 300.00 | $ 300.00 | $ 300.00 | $ 300.00 | $ 1,200.00 |
| Miscellaneous | Contingency | | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 2,000.00 |
| Fire & Sprinkler | Fire Alarm Monitoring | | $ 50.00 | $ 50.00 | $ 50.00 | $ 50.00 | $ 200.00 |
| Clubhouse Cleaning | Daily Cleaning of Clubhouse | | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 2,000.00 |
| Pressure Washing | Pressure Washing | | $ 250.00 | $ 250.00 | $ 250.00 | $ 250.00 | $ 1,000.00 |
| Professional Fees | Annual Federal Tax Filing | | $ - | $ - | $ - | $ - | $ - |
| Pool & Water Park Maintenance | Daily Pool Maintenance Florida Villas Direct | | $ 6,000.00 | $ 6,000.00 | $ 6,000.00 | $ 6,000.00 | $ 24,000.00 |
| Repairs and Maintenance | Repairs & Maintenance General | | $ 4,500.00 | $ 4,500.00 | $ 6,500.00 | $ 6,500.00 | $ 22,000.00 |
| Utilities | Electricity & Water Utilities | | $ 11,000.00 | $ 13,000.00 | $ 15,000.00 | $ 15,000.00 | $ 54,000.00 |
| **Total Expense** | | | $ 32,450.00 | $ 34,450.00 | $ 38,450.00 | $ 38,450.00 | $ 143,800.00 |
| **Net Ordinary Income** | | | $ 14,667.96 | $ 12,667.96 | $ 8,667.96 | $ 8,667.96 | $ 44,671.84 |

Exhibit A